## THE STATE v. EUGENE McGEE and JAMES McGEE, Appellants.

### Division Two, May 19, 1908.

1. **EVIDENCE: Sufficiency: Stealing Chickens.** Where the prosecuting witness and his wife identified one chicken found in defendants' stable loft as his, and testified that they saw one of defendants in the presence and at the suggestion of the other attempt to wring its head off, and defendants denied they stole the chicken and testified it belonged to them, this, with other evidence in the case (such as that six chickens and two ducks had been stolen and that the heads of two chickens were found on a pile of manure near defendants' stable, which were bloody and showed the chickens had recently been killed, that defendants had a stove in their stable and were seen eating chickens the next day after the theft, and that one of them was heard to charge a younger brother with giving "the whole thing away"), tended to show such actual and exclusive possession of one chicken by defendants as justified the submission of the case to the jury, and to justify a verdict of guilty.

2. **MINOR DEFENDANT: Instruction as to Reform School: Harmless.** The court should not instruct the jury that if they find a defendant guilty and it appears that he is under eighteen years of age he cannot be sent to either the jail or the penitentiary, but in lieu thereof shall be committed to the Reform School for Boys. The jury have nothing to do with that matter. But the instruction cannot be prejudicial to defendant, and the judgment will not be reversed on the ground of its inapplicability.

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench,* Judge.

AFFIRMED.

*James C. Shaner* for appellants.

(1) The court should have sustained the demurrer offered by the defense at the close of the State's case. The only evidence, if any, against the defendants to connect them in any way with the crime charged, was the fact that one chicken, which was identified by the prosecuting witness, Archie Perkins, as one of those stolen, was found in the loft of the stable owned and controlled by the uncle of the defendants. This possession, if any, is certainly not such exclusive possession as is contemplated by the law laid down by this court. State v. Castor, 93 Mo. 242; State v. Taylor, 111 Mo. 538; State v. Bruin, 34 Mo. 537; State v. Crank, 75 Mo. 406; State v. Sidney, 74 Mo. 390; State v. Babb, 76 Mo. 501; State v. Belcher, 136 Mo. 135; 3 Greenl. Evid., sec. 33. (2) The court committed error in giving instruction 3. The defendants were jointly charged with the crime of grand larceny, but were not charged with acting jointly with others not named in the information. State v. Warford, 106 Mo. 64; State v. Castor, 93 Mo. 242. (3) Instruction 6 should not have been given, and furthermore it incorrectly states the law. R. S. 1899, sec. 2381.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) No objections were made or exceptions saved to the instructions at the time the same were given. The first mention of any objection to them is in the motion for a new trial, which is insufficient. State v. Cavin, 199 Mo. 158; State v. Yandell, 201 Mo. 661. (2) There was ample evidence tending to prove that both defendants were guilty. State v. Estes & Johnson, 209

Mo. 288. The recent and unexplained possession of the stolen pet chicken was a circumstance sufficient to justify the jury in convicting the defendants, especially as said chicken was concealed in the hay loft, and an effort was made by the defendants to kill said chicken, and defendants denied that there was any chicken in the hay loft. State v. James, 194 Mo. 268; State v. Toohey, 203 Mo. 678; State v. Howard, 203 Mo. 600; 4 Elliott on Evidence, sec. 3058. True, the defendants denied the larceny, and claimed that the chickens they were eating belonged to them. But they never did explain the fact of their presence in that stable at midnight on the night of the larceny, nor the noise made by the captured chickens at that very time. Under the evidence and circumstances developed, the jury were justified in disregarding all of the evidence of both defendants. Where there is substantial evidence tending to prove that a defendant is guilty, this court will defer to the finding of the jury, and not attempt to weigh the evidence. State v. Smith, 190 Mo. 706; State v. Groves, 194 Mo. 452; State v. Payne, 194 Mo. 442; State v. Swisher, 186 Mo. 8; State v. Yandell, 201 Mo. 646.

BURGESS, J.—On April 16th, 1907, the assistant circuit attorney of the city of St. Louis filed an information, duly verified, in the circuit court of said city, charging the defendants with stealing, in the night time, six Plymouth Rock chickens and two white ducks, of the value of seven dollars, all the personal property of Archie Perkins. The defendants, on May 15, 1907, were jointly tried, and both were convicted, the punishment being assessed at two years in the penitentiary. The court, being satisfied that defendant Eugene McGee was under eighteen years of age, changed his punishment to three years in the training school for boys. After filing a formal motion for a new trial, which was denied, the defendants appealed.

212 Sup—7

The State's evidence tended to prove that prose-
cuting witness, Arch Perkins, resided, on the 3rd day of
March, 1907, at No. 1612 Glasgow avenue, in the city
of St. Louis. In the rear of Perkins's house there was
an alley, and the two defendants, who were brothers,
aged 20 and 17, respectively, resided with their father
and uncle a few houses from Perkins, and the back
premises of both houses opened on said alley. In the
rear of Perkins's residence there was a small yard, and
a few feet from the house in said back yard, there was
a coop containing Perkins's chickens. On Saturday
night, March 3rd, Perkins fastened five hens, a rooster
and three ducks in said coop, and locked the door. All
of said fowls belonged to Perkins, and one was a pet
chicken. The next morning, at seven o'clock, when
Perkins went out to feed his fowls, he found that they
were all gone, except one duck. He also found the door
of the chicken coop open, and saw some burnt matches
and cigarette papers lying near the chicken house; also
a lot of feathers. Out in the alley Perkins also found
feathers, which were strung along down to the stable
in the rear of the defendants' place, and he found blood
on the rocks in the alley near the stable. The feathers
were of the same color as the chickens which Perkins
owned—Dominique chicken feathers. He also found
two chicken heads on a pile of manure in the stable lot
at the rear of the defendants' place. These chicken
heads were bloody and showed that the chickens had
recently been killed. That afternoon, Perkins was
working in his stable, and he heard the two defendants
talking in their stable, which adjoined the Perkins
stable. The defendants were eating a dish of cooked
chicken and drinking beer in the stable. Perkins peeped
through a crack in the wall and saw both defendants
in the act of eating and drinking. He heard a younger
brother of the two defendants say, "Jim, mamma said
send her a quarter or another one of those chickens."
The defendant, Eugene McGee, threw a beer faucet

at his little brother, and called him a little snitch, saying, "He has given the whole thing away; I will make Claycamp whip him for snitching." The defendant, James McGee, then said, "O, Eugene, go up and pull that other one's head off." And defendant, Eugene McGee, then went up in his hay loft and tried to wring its head off, and did succeed in breaking the skin and ruffling the feathers of the chicken. Perkins and wife, who were then watching the performance through the crack in the wall, gave the alarm, and the chicken made its escape. When accused of having one of Perkins's chickens in their stable loft, the defendants denied it; but the chicken was found in said loft by the Perkinses, and by the police immediately afterwards. This was the pet chicken, which they recognized, and which came to Mrs. Perkins as soon as she called it; its feathers were badly ruffled and its neck was bleeding. The State's evidence further tended to show that the chickens stolen were reasonably worth $8 and that the ducks were reasonably worth $2.50. The evidence further tended to prove that the two defendants had a stove in this stable, and cooked chicken that day on said stove; and also burned chicken feathers; that Perkins reported the larceny to police officer Bittel, who went to the stable where the defendants still were, and knocked at the door, and when Perkins accused the defendants of stealing his chickens they denied it, claiming that the chickens belonged to them; that about one o'clock Saturday night, the two defendants were in said barn with a lighted candle, and that a police officer heard noises as of captured chickens at the time said chickens were being carried down the alley near said stable.

The two defendants testified, denying that they stole Perkins's chickens, and claiming that the chickens they were eating that Sunday belonged to them. They denied knowing anything about Perkins's chickens or ducks, or what was their color, and denied that there were any chicken heads near the stable. Both stated

that the chicken found in the stable loft, which Perkins claimed as his, belonged to them, but were unable to say how the chicken was injured and the feathers plucked from its neck. They introduced some evidence tending to prove a good reputation for honesty, but two of their character witnesses admitted, on cross-examination, that they had heard that the defendants had previously been arrested on the charge of stealing a cow.

At the close of the State's case the defendants asked for an instruction in the nature of a demurrer to the evidence, which was refused, and they saved an exception. As grounds for this demurrer, the defendants contended that the only evidence connecting them in any way with the crime charged against them was that in relation to the finding of a chicken in the loft of the stable owned and controlled by the uncle of the defendants, which chicken was identified by the prosecuting witness, Archie Perkins, as one of those stolen.

The prosecuting witness, Archie Perkins, identified the chicken found in the stable loft as his, while both defendants testified that it belonged to them, and these facts, with others in evidence, tended to prove such actual and exclusive possession of the one chicken by the defendants as to justify the submission of the case to the jury, and, for that matter, to justify the verdict of the jury.

It is next insisted that the court committed error in giving instruction number 3. This instruction merely went to the competency of the defendants as witnesses in their own behalf, and the consideration to be given such testimony by the jury. It is in a form often approved by this court, and free from objection.

Instruction number 6 is claimed to be erroneous and prejudicial to the defendants, and incorrectly states the law. The last sentence of this instruction is as follows:

"If after such conviction, if any, it shall be made

to appear to the court that any defendant so found guilty is under the age of eighteen years, the law directs that he shall not be sent either to the jail or to the penitentiary, but in lieu thereof shall be committed to the Missouri Training School for Boys, at the city of Boonville, Missouri, for a period of not less than two years, nor beyond the time when he shall arrive at the age of twenty-one years.''

The matter of this part of the instruction was something with which the jury had nothing whatever to do, and was altogether for the court. [State v. Darling, 199 Mo. 168; State v. Townley, 147 Mo. 205.] It could not, however, have been in any way prejudicial to the defendants, or either of them, and the judgment should not be reversed upon the ground of the inapplicability of said part of the instruction to any issue in the case.

Finding no reversible error in the record, the judgment is affirmed. All concur.